## S95A0447. SAMS v. THE STATE.
(459 SE2d 551)

FLETCHER, Justice.

Melvin D. Sams was convicted of possession of cocaine with intent to distribute and sentenced to life without parole under OCGA § 17-10-7. He appeals, contending that the trial court erred in denying his motion to suppress. We reverse because the seizure of cocaine resulted from an unlawful investigatory stop and therefore, the trial court should have granted the motion to suppress.

At approximately 9:30 p.m. on December 21, 1993, an officer became suspicious of Sams when he observed Sams, whom he thought was a white male, in a predominantly black housing project. Sams, who is African-American, was walking on a sidewalk near a red Ford pickup truck, which was parked legally and created no traffic hazard.

The officer followed Sams and eventually directed Sams to come to him. Sams did not comply. The officer tackled Sams, and immediately placed him under arrest for prowling and obstruction of an officer.

The officer found a matchbox containing what appeared to be cocaine residue in the pocket of Sams' pants and jacket and $556.33 in cash. Nearby, the officer found a set of Ford vehicle keys. The officer and another officer used the Ford keys to unlock the red truck, which was parked a block from the point of arrest. Inside the truck was an opaque plastic bag, which contained a slab of crack cocaine and a small bag containing powdered cocaine.

1. The state contends that the officer had sufficient grounds to detain Sams for questioning and to arrest Sams and that the search of Sams following the arrest gave probable cause to believe the truck contained drugs. To justify a brief *"Terry"* stop, an officer must have an articulable, reasonable suspicion that the law is being violated.[1] The reasons justifying an investigatory stop need not rise to the level of probable cause, but must be more than a mere hunch and must not be arbitrary or harassing.[2] If the officer lacked a reasonable, articulable suspicion to stop Sams, the search of Sams and the truck, resulting from that stop, was unlawful.

2. Sams was walking in a residential area at 9:30 at night when people are commonly in the area. The officer's suspicions were raised, not by Sams' behavior, but by Sams' apparent race. A person's race by itself does not establish a reasonable basis to believe criminal activity is afoot. Nor does the fact that Sams sought to avoid an encounter with the police establish a reasonable basis in these circumstances. Sams walked away from the officer in a way that the officer described as "normal." The officer's decision to order Sams to stop was based only on Sams apparent race and the fact that Sams walked away upon seeing the officer. These circumstances do not rise to the level required to justify a brief detention.[3]

Because the officer's decision to detain Sams was not based on a reasonable, articulable suspicion, the resulting search of Sams and the truck were unwarranted and the trial court erred in failing to suppress the contents of the truck.

3. Finally, the state contends that the search of the truck may be justified as an inventory search. The state may inventory the contents of a car that has been lawfully impounded. In this case, however, the officer had no authority to impound the truck because the truck was

---

[1] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968); *State v. Barnes*, 210 Ga. App. 654 (436 SE2d 798) (1993).

[2] Id.; *State v. White*, 197 Ga. App. 426, 427 (398 SE2d 778) (1990).

[3] *White*, 197 Ga. App. at 427 (officers do not have general authority to detain anyone who exhibits merely furtive behavior).

legally parked and was not creating a traffic hazard.[4]

4. In light of our reversal, we need not address Sams' other enumerations of error.[5]

*Judgment reversed. All the Justices concur, except Hunstein and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

If the evidence adduced at the hearing on Sams' motion to suppress were as the majority suggests, I would concur in its holding that the trial court erred in denying that motion. In my opinion, however, the majority mischaracterizes the evidence and, based upon that mischaracterization, reaches the erroneous legal conclusion that the trial court's order must be reversed. Accordingly, I respectfully dissent.

An officer was patrolling alone in a high-crime, high-drug area when he initially observed Sams who apparently was making an approach to a parked red truck. The majority bases its reversal of the denial of the motion to suppress cocaine found in the truck upon its finding that the evidence shows that "[t]he officer's suspicions were raised, not by Sams' behavior, but by Sams' apparent race." This finding by the majority is not only a partially incorrect statement of the evidence, it also is immaterial to the resolution of this case. The majority's finding is partially incorrect because the trial court was authorized to find that the officer's *initial* suspicions were raised by Sams' apparent race *and* Sams' behavior in the high-crime, high-drug area. That suspicious behavior consisted of Sams' decision, after seeing the patrol car, to turn away from the truck that he seemingly was approaching and to walk behind an apartment building. The majority's partially incorrect finding is immaterial to the resolution of this case because the trial court was authorized to find that the officer did *not* undertake to seize Sams based upon these *initial* suspicions.

Instead, the officer drove down the street, turned around and drove back. When Sams reappeared from behind the building and saw that the officer had returned, Sams "immediately spun around and walked back behind the building again." At this point, the officer merely stopped his patrol car and walked behind the building. When he saw the officer, Sams "started trotting, and he ran behind" yet another building. The officer followed and, upon rounding the other building, saw Sams and called for him to "come here." The officer was *not* planning to arrest Sams at that time, but was merely endeavoring

---

[4] See *State v. Creel*, 142 Ga. App. 158 (235 SE2d 628) (1977) (search of car parked one-half block from site of valid arrest not justified as inventory search where car was legally parked and created no traffic hazard).

[5] This court retained jurisdiction of this case because of Sams' constitutional attack on OCGA §§ 16-13-30 (d) and 17-10-7 based on *United States v. Jackson*, 390 U. S. 570 (88 SC 1209, 20 LE2d 138) (1968).

to find out what Sams "was doing and why he was doing what he was doing." In response to the officer's directive, however, Sams "turned around and started running." At this point, the officer gave chase and made two more observations. The officer saw that his initial belief about Sams' "apparent race" was mistaken and that, as Sams ran, Sams seemed to be throwing items from his pocket. The officer continued to pursue Sams and, about ten or fifteen feet from the point where Sams was tackled, the officer heard a sound "like keys, hitting the pavement, hit[ting] the ground." After subduing Sams and arresting him, the officer conducted a search of Sams' person and found a matchbox containing what appeared to be cocaine and $556.33 in cash. Returning to the point where he had heard the sound of keys hitting the pavement, the officer found a set of car keys and another matchbox containing crack cocaine. The keys and matchbox were still warm, apparently from Sams' body heat. The keys were to the truck from which Sams had first turned and walked away when he observed the officer. After Sams stated that "he didn't know anything about the truck," it was searched and additional quantities of cocaine were discovered therein.

On this evidence, the trial court was authorized to find that any initial suspicion about Sams' "apparent race" had not been a factor in the officer's ultimate decision to seize Sams. If it had been, the officer presumably would have stopped the pursuit upon discovering that his initial suspicion in that regard was mistaken. Instead, the trial court was authorized to find that the officer's decision to seize Sams was based entirely upon Sams' escalating efforts to evade the officer, which efforts had culminated in Sams' unexplained flight in a high-crime, high-drug area. Accordingly, the issue for resolution is not, as the majority holds, whether the keys to the truck and the cocaine contained therein should be suppressed as the fruits of a seizure which was "unreasonable" because it was based upon Sams' "apparent race." The issue for resolution is whether those items should be suppressed as the fruits of a seizure which was "unreasonable" notwithstanding Sams' evasive conduct.

The officer certainly did not seize Sams by parking the patrol car and following Sams for the purpose of questioning him. It is "clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U. S. 429 (111 SC 2382, 2386 (II), 115 LE2d 389) (1991). Since *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), the Supreme Court of the United States has "held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick*, 111 SC, supra at 2386 (II). Indeed, that court has held that even when officers have no basis for suspecting a particular individual, "they may generally ask questions of that individual ([cits.]) . . . as long as

the police do not convey a message that compliance with their requests is required." *Florida v. Bostick,* 111 SC, supra at 2386 (II).

It is undisputed that Sams was not seized as the result of compliance with the officer's directive to "come here" for the purposes of inquiry, since, in response thereto, Sams bolted and ran.

> The word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. . . . It does not remotely apply, however, to the prospect of a policeman yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. That is no seizure.

*California v. Hodari D.,* 499 U. S. 621 (111 SC 1547, 1550, 113 LE2d 690) (1991). Likewise, Sams was not seized simply because the officer gave chase. "An arrest requires *either* physical force . . . *or,* where that is absent, *submission* to the assertion of authority." (Emphasis in original.) *California v. Hodari D.,* 111 SC, supra at 1551. Sams was seized only when the officer succeeded in tackling him and stopping his flight. By that point, however, Sams had already abandoned his keys to the truck and a matchbox of cocaine. Thus, the keys and the matchbox were not the fruits of an unreasonable seizure and the trial court correctly found that Sams had no standing to seek to suppress those items.

> In sum, assuming that [the officer's] pursuit in the present case constituted a "show of authority" enjoining [Sams] to halt, since [Sams] did not comply with that injunction he was not seized until he was tackled. The [keys and] cocaine abandoned while he was running was in this case not the fruit[s] of a seizure, and his motion to exclude evidence of [them] was properly denied.

*California v. Hodari D.,* 111 SC, supra at 1552.

The ensuing search of the truck and the seizure of the cocaine contained therein were authorized on one or more alternative grounds. Having fled from the vicinity of the truck and thrown away the keys thereto and denied any knowledge thereof, Sams had, in effect, abandoned the truck itself. See *Young v. State,* 190 Ga. App. 775 (380 SE2d 309) (1989). Sams' flight from the vicinity of the truck, coupled with his abandonment of the keys and a matchbox of cocaine, provided probable cause to conduct an immediate search of the truck, since it was parked on a public street in a high-crime, high-drug area rather than on private property and it might have been moved or the evidence therein removed before a warrant could be obtained. Warrantless searches of vehicles "have been sustained in cases in which

the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not non-existent. [Cit.]" *Cady v. Dombrowski*, 413 U. S. 433, 441-442 (II) (93 SC 2523, 37 LE2d 706) (1973). Since Sams had abandoned the keys to the truck but denied any knowledge thereof, an impoundment and inventory to protect the undetermined owner was a viable alternative to leaving it parked in a high-crime, high-drug area. Inventory searches of automobiles impounded or otherwise in police custody are deemed "reasonable where the inventory is aimed at securing or protecting the car and its contents as well as the protection of the police against claims or disputes over lost or stolen property. [Cit.]" *State v. Travitz*, 140 Ga. App. 351, 352 (231 SE2d 127) (1976).

In a hearing on a motion to suppress, the trial court sits as the trier of fact, its decision with regard to questions of fact and credibility must be accepted unless clearly erroneous, and the evidence must be construed most favorably to the upholding of the trial court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). When these principles are correctly applied in the instant case, the trial court's denial of Sams' motion to suppress must be affirmed. I respectfully dissent, therefore, to the majority's reversal of the trial court's order.

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED JUNE 5, 1995 —
RECONSIDERATION DENIED JUNE 30, 1995.

*Hine, Niedrach & McClellan, John E. Niedrach,* for appellant.
*Stephen F. Lanier, District Attorney, C. Stephen Cox, Assistant District Attorney,* for appellee.