**UNITED STATES of America,**

v.

**Ernest Russell SKINNER, Defendant.**

**No. 5:96–CR–46 (DF).**

United States District Court,
M.D. Georgia,
Macon Division.

March 4, 1997.

---

Charles E. Cox, Jr., Macon, GA, for Ernest Russell Skinner.

George R. Christian, U.S. Atty., Macon, GA, for U.S.

FITZPATRICK, Chief Judge.

Before the Court is Defendant's motion to suppress from evidence certain items that were found during an inventory search of an automobile that he had rented. The Court held a hearing on this motion on February 12, 1997. During the hearing the Court heard the testimony of Special Agent Greg McClendon, Detective Kelly Monroe, and Lt. Carey Parker. The following findings of fact and conclusions of law are entered after examining the entire record and determining the credibility of the witnesses.

## I. Findings of Fact

The motion to suppress focuses on an inventory search that followed an arrest on October 25, 1995. The Fourth Amendment analysis of this search requires consideration of the events leading up to that arrest.

In the fall of 1995 Defendant worked for a company known as Advantage Publications; he sold advertisements in various publica-

tions to doctors in Tennessee and Georgia. Advantage Publications had a valid business license in Tennessee but did not have a City of Macon business license. In September, 1995, Defendant came to Macon, Georgia to solicit sales of advertisements from local doctors.

Also in September, 1995, Federal Bureau of Investigation (FBI) Special Agent Greg McClendon had received complaints from doctors that Defendant had taken their money and failed to publish their advertisements. For example, Dr. Bob Mattox, a dentist practicing in Macon, informed Agent McClendon that a check written by Mattox for $600.00 had been cashed at a check cashing company in Knoxville, Tennessee, and Mattox had not seen the advertisement that was promised by Defendant Skinner. Dr. Mattox also reported that he had heard of other doctors who had paid Defendant but had not seen any published advertisements.

On September 18, Agent McClendon went to the Macon Police Department and informed members of the Macon Police Department, Lt. Carey Parker and Detective Kelly Monroe, of the FBI investigation into the business practices of Defendant. After this, and at the suggestion of Agent McClendon, the Macon police performed an investigatory stop of Defendant. The police identified the Defendant and ascertained that he was driving a rental car. After this information was reported to Detective Monroe, he conducted additional investigations. Monroe determined that Defendant's license had been suspended, and the car had been rented from McFrugal Rental Company. Monroe then spoke with a manager at McFrugal, who informed Monroe that the car had been driven out of the sixty mile radius delineated in the rental agreement and asked that the police return the car to the Macon office of McFrugal. Detective Monroe also learned that Defendant did not have a license to conduct business in Macon.

On September 21, Defendant contacted another Macon doctor, Dr. Christopher McClendon[1], and discussed the purchase of an advertisement. Dr. McClendon informed Special Agent McClendon that he had arranged for Defendant to come to his office to discuss the proposed advertisement. On September 25, 1995, Agent McClendon and Detective Monroe went to Dr. McClendon's office, but the Defendant did not arrive at the scheduled time, and Agent McClendon and Detective Monroe left. Later that day, the Macon Police Department received a telephone call from Dr. McClendon's office informing them that the Defendant was in the office. In response, Lt. Parker went to the doctor's office and observed Defendant holding a check from the doctor. Lt. Parker arrested Defendant, and charged him with violating a Macon ordinance, the Business License Code.

Defendant was taken to the police department and given *Miranda* warnings. The police then interviewed Defendant. During the course of the interview the police informed Defendant that McFrugal Rental Company had directed the Macon Police Department to have the car rented by Defendant towed to McFrugal's Macon Office. Defendant told Detective Monroe that the rental car was parked in the parking lot of HCA Coliseum Hospital. The Defendant was then taken to the Bibb County Law Enforcement Center, LEC, and held until he posted bond later that day.[2]

After Defendant was taken to the LEC, Detective Monroe went to the hospital parking lot and called for a tow truck. After the tow truck arrived, Detective Monroe directed the driver to unlock the rental car. Detective Monroe then performed an inventory search of the car. Detective Monroe found a small amount of marijuana under the driver's seat and a plastic container full of 3½" computer discs. Some of the computer discs were labeled with filenames such as "YOUNG FEMS," "YUNG X 5–17," and "FIFTEEN HOT TEENS." Believing that these discs might contain computer images including child pornography, Detective Monroe notified Agent McClendon.

---

1. Dr. McClendon is not related to Special Agent Greg McClendon.

2. Defendant was released on bond at approximately 6:30 P.M. on the day of his arrest.

Upon his arrival at the Hospital parking lot, Agent McClendon photographed the car and the items seized. He then went to the Bibb County LEC to interview Defendant. Defendant admitted that the marijuana and the computer discs belonged to him. However, he stated that he did not know of any child pornography on the computer discs. Agent McClendon examined four of the discs himself and determined that there was child pornography on the discs. He then presented an affidavit for a search warrant before the Honorable Claude W. Hicks, Jr., United States Magistrate Judge. In January, 1996, a search warrant was issued and the images contained in the computer discs along with the text was reviewed by the FBI. The disks were found to contain what appears to be child pornography.

## II. Conclusions of Law

The Court finds that the seizure of the computer discs from the Defendant's rental car was constitutionally deficient for two reasons. First, the government failed to prove that its knowledge of Defendant's rental agreement was legally obtained, and second, the decision to impound the rental car was unconstitutional because it was not governed by standard police policy and it was driven by an impermissible investigatory motive.

### A. Traffic Stop

■ There are two possible justifications for stopping an automobile. The first exists when the police officer has probable cause to believe that the driver is committing a traffic violation. The government did not prove that a traffic violation was the reason for the investigatory stop of Defendant on September 18, 1995.

■ Second, when no traffic violation occurs, an officer may perform an investigatory stop if supported by articulable suspicion. In situations, such as this, which involve "reasonably brief encounters in which a reasonable person would have believed that he was not free to leave," an officer must justify the stop with specific articulable facts that are sufficient to give rise to a reasonable suspicion of criminal conduct. *U.S. v. Strickland*, 902 F.2d 937 (11th Cir.1990). As with the probable cause analysis, supra, the absence of the testimony of the officer who made the investigatory stop leaves a void in the factual record. Despite Agent McClendon's articulable suspicion that Defendant was engaged in fraud, it is not clear that the Macon Police, and the officer who made the stop in particular, had sufficient knowledge of Defendant's activities to constitute articulable suspicion.

Special Agent McClendon testified that the Macon Police conducted an "investigatory stop" in September, 1995 at his request. He testified that the purpose of this stop was to gather some information about Defendant Skinner. Agent McClendon could not recall whether the police officer had observed a traffic violation or not. From this record, the government has not satisfied its burden of proving that the investigatory stop was legal under the fourth amendment. Therefore information obtained during the stop could not legally be used to facilitate further investigations involving Defendant. During the investigatory stop, the Macon Police learned that Defendant was driving a rental car. Without this information they would not have been able to contact McFrugal and ascertain that Defendant had taken the car out of the area defined by the rental contract. In short, without information attained in the investigatory stop, the police would not have known that there was a car to impound.[3]

### B. Inventory Search

■ The United States Supreme Court has held that inventory searches are consistent with the Fourth Amendment. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The validity of an inventory search, however, hinges on the legality of the decision to impound the car. The decision to impound a car must be made according to standard criteria and on the basis of something other than suspicion of

---

**3.** The Court recognizes that the broad scope of the suppression hearing might account for the government's failure to call the officer as a witness. Because of the uncertainty regarding the officer's state of mind, the Court does not base its holding on this issue alone.

**232**

evidence of criminal activity. *Colorado v. Bertine,* 479 U.S. 367, 375, 107 S.Ct. 738, 742–43, 93 L.Ed.2d 739 (1987). The inventory search in this case is invalid because the car was not impounded according to standardized criteria and the facts of this case suggest an investigatory motive.

In *Colorado v. Bertine,* the Supreme Court considered an inventory search that followed an arrest for drunk driving. 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). One issue addressed in *Bertine* was whether the police violated the Fourth Amendment by impounding the vehicle rather than permitting the arrestee to make alternative arrangements for its disposition. *Id.* at 373–74, 107 S.Ct. at 742–43. The Court stated:

> The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative less intrusive means.... [R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure.

*Id.* The Court emphasized that inventories should be "conducted according to standardized criteria." *Id.* at 374 n. 6, 107 S.Ct. at 742 n. 6.

In evaluating the law of inventory searches the Eleventh Circuit stated:

> [T]he 'contours' of the right appear to be as follows: Even if an arrestee's vehicle is not impeding traffic or otherwise presenting a hazard, a law enforcement officer may impound the vehicle, so long as the decision to impound is made on the basis of standardized criteria and on the basis of 'something other than suspicion of evidence of criminal activity.' If the vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria. Because an inventory search is an exception to the Fourth Amendment's warrant

requirement, however, the government officer has the burden to show that the requirements of the inventory search exception have been met."

*Sammons v. Taylor,* 967 F.2d 1533, 1543 (11th Cir.1992).

The Macon Police Department Procedures state:

> A. When the operator of a vehicle is arrested for a violation of state or local law, the vehicle may be impounded for safekeeping.
>
> B. In cases where the driver is taken into custody and another person is authorized and capable of taking control of the vehicle, it may be unnecessary for the officer to impound it.
>
> . . . . .
>
> H. Release of Vehicle to Owner
>
> 1. All impounded vehicles shall be released to the owner upon proof of ownership.
>
> . . . . .
>
> 4. Vehicles without a "hold" may be released upon proper proof of ownership and any applicable fees of the towing service shall be the responsibility of the owner and/or person responsible for the vehicle.

The purpose of these criteria is to limit officer discretion in the decision to impound a vehicle. By allowing cars to be impounded and searched only if called for by the police department's standard operating procedures, the Court ensures that inventory searches are conducted to protect the police officers and the arrestee's property, and not to discover evidence. Accordingly, the Court cannot allow an expansive interpretation of the Macon Police Department's written guidelines. Section A of the guidelines, quoted above, states that a car may be impounded when the "operator" of that vehicle is arrested. At the time of the arrest, Defendant was not operating the vehicle.[4] An interpretation of the guidelines that would permit impounding Defendant's car in this case would be so

4. The Macon Police Department Automobile Property Inventory Report for the rented car states, "No Driver."

broad that it would negate the value, in terms of constitutional protections, of having guidelines.

Police guidelines may allow some discretion for police officers in their decision whether or not to impound a car. For example, the guidelines of the Boulder Police Department evaluated in *Bertine*, like the Macon criteria, give the police officer a choice as to whether or not to impound a vehicle. 479 U.S. 367, n. 1, 107 S.Ct. 738, n. 1. In *Bertine*, however, the officer's discretion was guided by another provision of the Boulder policy regarding the feasibility of parking and locking a vehicle rather than impounding it. *Id.* at 375–76, 107 S.Ct. at 742–44. The Macon guidelines did not provide a similar check on the officer's discretion. In this case, the absence of clear guidance caused the decision to be entirely delegated to the discretion of the arresting officer. Thus the Macon Police Guidelines failed to adequately protect Defendant's Fourth Amendment rights.

■ Review of the case law reveals that valid impoundment of vehicles can be divided into two categories: where the arrestee is in or near the car at the time of arrest, or where the car must be moved. The facts of this case do not fall into either of these categories.

In *Bertine* the car impounded was being driven by the defendant at the time he was stopped for drunk driving. In contrast to *Bertine*, there is no direct link between the rental car and the crime in this case. 479 U.S. at 369, 107 S.Ct. at 739–40. *See also State v. Creel,* 142 Ga.App. 158, 235 S.E.2d 628 (1977) (search of car parked one half block from site of valid arrest not justified as inventory search where car was legally parked and created no traffic hazard).

■ A car may be impounded if it is illegally parked or if it poses a safety risk. The car that was searched in *Opperman* had been impounded for multiple parking violations. *Id.* at 369, 375, 96 S.Ct. at 3097, 3100 (the "authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is

beyond challenge.") In *Sams v. State,* 265 Ga. 534, 459 S.E.2d 551, 552 (1995), the Supreme Court of Georgia held that an officer had no authority to impound a truck where it was legally parked and was not creating a traffic hazard. In this case, the car was legally parked.

The failure of the Macon guidelines to adequately guide the officer's decision to impound, and the absence of authority that supports the type of impoundment involved here, indicate that the inventory search of the rental car was unconstitutional. In addition, the Court also finds that the facts of this case demonstrate that the police were motivated by a desire to find incriminating evidence.

In this case, the following facts suggest an investigatory motive: Defendant was not arrested for a crime involving his car, the car was legally parked in the hospital parking lot, the police needed to ask Defendant about the location of his car in order to find it, and Defendant was not held in custody for an extended time after his arrest.

The Court can find no legitimate motivation for an impoundment that spanned only the amount of time necessary to perform a search. At the hearing on this motion the Government pointed out that the purpose of the inventory search is to fulfill the caretaking function of the police in securing the contents of the vehicle. *See also United States v. Khoury,* 901 F.2d 948 (11th Cir. 1990). Inventories provide records that could be important in protecting the police from false claims of damage or loss. This protection would not be necessary if the Police never asserted control over the vehicle. The officer's decision to impound the vehicle for a period that was just long enough to search it does not further the caretaking role of the police.[5] Instead, it indicates that the police hoped to find evidence of fraud.

It seems that after being told by the owner of the car, McFrugal, that they would like the car returned to their Macon office, the police would have simply advised McFrugal of the location of the car and let McFrugal

---

5. At the conclusion of the search, the police left valuable items such as a scanner and a camera in the rental car. This does not exhibit concern for protecting Defendant's property.

make the towing arrangements. The Court is aware of at least one case in which a vehicle that had been rented by the arrestee was not impounded. The suspect was arrested in front of his apartment, and his car, which was owned by the arrestee, was impounded and searched, but the a truck he had rented was not. The Court noted: "[B]ecause it is ... departmental policy to relinquish possession of a commercial vehicle to the owner, the U–Haul truck was not impounded. Instead the officers called the U–Haul company and asked that the truck be retrieved." *State v. Lowe,* 224 Ga.App. 228, 480 S.E.2d 611, 612 (1997). While this quotation is merely a factual observation by the court in *Lowe,* it supports this Court's belief that impounding a rental vehicle before returning it to the rental company is not necessary for the police to fulfill their caretaking function.[6]

The Court concludes that the Macon Police Guidelines were not sufficient to protect the Fourth Amendment Rights of Defendant and that the inventory search was the result of an impermissible investigatory motive. Therefore, the inventory search of Defendant's rented car is invalid and all evidence discovered during this search must be suppressed.

Accordingly, Defendant's motion is hereby GRANTED.

See also, 813 F.Supp. 1570.

---

**6.** While *Bertine* makes it clear that the Court does not analyze the validity of impounding a vehicle in terms of a search for a less intrusive alternative, the court must use circumstantial evidence to determine the motive of the searching officers.