In the Supreme Court of Georgia

Decided:    October 20, 2014

S13G1793.  THE STATE v. WALKER.

HINES, Presiding Justice.

This Court granted a writ of certiorari to the Court of Appeals in *Walker v. State*, 323 Ga. App. 558 (747 SE2d 51) (2013), to determine if that Court erred in reversing the trial court's denial of the motion to suppress evidence of cocaine found as a result of an encounter between a police officer and Ernest Walker, Sr.  Finding that the Court of Appeals erred, we reverse that Court's judgment.

According to the facts as found by the trial court after the hearing on Walker's motion to suppress,[1] Officer David Adriance, of the Warner Robbins Police Department, was patrolling an area near an elementary school at 12:12 a.m. on February 23, 2011; he had been advised to be on the lookout for a black

---

[1] "On appellate review of a ruling on a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review." *Registe v. State*, 292 Ga. 154, 155-156 (734 SE2d 19) (2012) (Citations and punctuation omitted.)

male in dark clothing who was a suspect in the attempted theft of a motorcycle. Officer Adriance saw Walker, who was wearing a hooded blue sweatshirt and light-colored pants, on foot on the grounds of the school. Officer Adriance approached Walker, telling him to remove his hands from his pockets; rather than complying, Walker became verbally combative, yelled that he was "just trying to get home," and "took off running through back yards, tossing stuff as he ran." Officer Adriance gave chase and caught Walker; the items Walker discarded included crack cocaine and a pipe for smoking crack cocaine, which he sought to suppress. After a jury trial,[2] Walker was convicted of possession of cocaine with intent to distribute and obstruction of a law enforcement officer; these convictions were reversed by the Court of Appeals. Further facts may be found in the opinion of the Court of Appeals. Id.

As the Court of Appeals characterized the case on appeal,

Walker contends that he was subjected to an investigatory detention when an officer stopped him as he stepped off the premises of an elementary school and instructed him to remove his hands from his pockets. Walker contends that the officer lacked a particularized and objective basis for suspecting that he was involved in criminal

---

[2] Walker petitioned for an interlocutory appeal from the denial of his pretrial motion to suppress under the procedures of OCGA § 5-6-34 (b), and the petition was denied by the Court of Appeals.

activity, as required for such a stop, and that, in the absence of any reasonable, articulable suspicion of criminal activity, he was entitled to refuse to comply with the officer's demands and to end the encounter by running away from the officer. Because the officer lacked a reasonable, articulable suspicion of criminal activity, Walker contends, the detention violated his Fourth Amendment right to be free from unlawful searches and seizures, and the trial court erred in denying his motion to suppress a quantity of cocaine and other drug-related items that were obtained as a result of the illegal detention.

Id. at 553 (1).

The Court of Appeals determined that Officer Adriance lacked articulable suspicion, and in doing so, set forth the following formulation:

Fourth Amendment jurisprudence recognizes three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. In the first tier, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative . . . stop of the citizen [under *Terry v. Ohio*, 392 U.S. 1 (88 SCt 1868, 20 LE2d 889) (1968) ]. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. . . . To make a second-tier stop, . . . a police officer must possess more than a subjective, unparticularized suspicion or hunch. The officer's

action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant intrusion. Further, the court must be able to determine that the detention was neither arbitrary nor harassing. . . . Moreover, in determining whether the stop was justified by reasonable suspicion, the totality of the circumstances—the whole picture—must be taken into account.

Id. at 559 (1) (Citation, punctuation, and parenthetical omitted.) The Court of Appeals then concluded that the facts of the encounter showed that

[w]hat the officer may have intended as a first-tier encounter . . . almost immediately escalated into a second-tier stop when the officer commanded Walker to remove his hands from his pockets; as such, the detention had to be supported by articulable suspicion. [Cit.]

Id. at 561.

In doing so, the Court of Appeals went astray; as it properly recognized in its citation to *Terry*, it is a *seizure* of a person that must be supported by articulable suspicion. And, it is clear from the facts of this case, that Walker was not *seized* within the meaning of the Fourth Amendment by Officer Adriance's direction that he remove his hands from his pockets; a command from a law enforcement officer, alone, is not sufficient to constitute a seizure for purposes of the Fourth Amendment. Rather, under the Fourth Amendment, a seizure occurs "[o]nly when the officer, by means of physical force or show of

4

authority, has in some way restrained the liberty of a citizen." *Terry*, supra at 19 (n. 16). And, it is unquestioned that Officer Adriance did not apply any physical force to restrain Walker's liberty until after Walker discarded the items he sought to suppress; he did not touch Walker or display a weapon, nor were other officers there such as might constitute a "threatening presence." See *United States v. Mendenhall*, 446 U.S. 544, 554 (100 SCt 1870, 64 LE2d 497) (1980). Accordingly, whether Walker was seized before he abandoned the items depends upon whether he had been seized through a show of authority on Officer Adriance's part; if he was not thus seized, his abandonment of the property was not the fruit of a seizure, and the motion to suppress the evidence was properly denied. *California v. Hodari D*., 499 U.S. 621, 629 (111 SCt 1547, 113 LE2d 690) (1991). See also *Brown v. State*, 239 Ga. App. 674, 676 (1) (522 SE2d 41) (1999) ("[D]efendant was not 'seized' when the cocaine was abandoned. He had not been touched by the officers; he did not submit to the officers' "show of authority"—the flashing blue lights. Simply put, defendant was in a state of flight when the cocaine was discarded and it cannot be said that it was the fruit of an illegal arrest.")

Walker contends that he was seized when Officer Adriance told him to

remove his hands from his pockets, as this was an assertion of the officer's authority. However, this ignores clear precedent from the United States Supreme Court that, absent physical force, for an encounter with a police officer to be considered a seizure under the Fourth Amendment, there must be "*submission* to the assertion of authority." Id. at 626 (Emphasis in original.) See also *Brendlin v. California*, 551 U.S. 249, 254 (II) (A) (127 SCt 2400, 168 LE2d 132) (2007) ("A police officer may make a seizure by a show of authority and without the use of physical force, *but there is no seizure without actual submission*; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned.") (Emphasis added.) And, instead of submitting to Officer Adriance's direction and removing his hands from his pockets, Walker ran. Although Walker describes the command to take his hands out of his pockets as a "second-tier" encounter, it was not; without his submission to the command, it was at most an attempted seizure, and "[a]ttempted seizures of a person are beyond the scope of the Fourth Amendment. [Cit.]" *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (n. 7) (118 SCt 1708, 140 LE2d 1043)

(1998).[3]

Citing *Mendenhall*, supra, Walker nonetheless argues that he was seized when Officer Adriance issued the command to remove his hands from his pockets, because "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," id. at 554, and a reasonable person would so regard Officer Adriance's direction. However, as *Hodari D.*, supra, made clear, the existence of such a reasonable belief would not end the matter. Rather, *Hodari D.* specifically notes that *Mendenhall*

> says that a person has been seized "only if," not that he has been seized "whenever"; it states a *necessary*, but not a *sufficient*, condition for seizure—or, more precisely, for seizure effected

___

[3] In this opinion, we address only the question of whether Walker's rights under the Fourth Amendment to the United States Constitution were violated; no question is posed regarding a violation under the corresponding provision of the Georgia Constitution. See Art. I, Sec. I, Par. XIII of the Ga. Const. of 1983. Although Walker cited the Georgia Constitution in his motion to suppress, "the [trial] court ruled only on the Fourth Amendment basis, and there is no state constitutional ruling for us to review. It is appellant's obligation to pursue the grounds he raises and obtain a ruling on them in the trial court, if he wishes to obtain appellate review. [Cits.]" *Thomas v. State*, 203 Ga. App. 529, 530-531 (1) (417 SE2d 529) (1992). Thus, properly, the Court of Appeals did not address any such claim, and, in any event, it has been noted that our Constitution protects against "unreasonable" searches and seizures just as the Fourth Amendment does. *Salermon v. State*, 280 Ga. 735, 738 (1) (632 SE2d 645) (2006). Further, when this Court granted the application for certiorari, the question posed referred only to the Fourth Amendment, and did not embrace any issue under the Georgia Constitution. See id.

through a 'show of authority.'

*Hodari D.*, supra at 628. And, as *Hodari D.* also made clear, without submission to that show of authority, there was not a seizure. Walker did not submit to Officer Adriance's command, and thus he was not seized until Officer Adriance *physically* seized him. That Officer Adriance pursued Walker when he ran does not alter matters as "being chased is *not* tantamount to being 'seized' in violation of the Fourth Amendment. [Cits.]" *Smith v. State*, 217 Ga. App. 680 (1) (458 SE2d 704) (1995) (Emphasis in original.) See also *Sims v. State*, 258 Ga. App. 662, 663 (574 SE2d 879) (2002) ("[B]ecause Sims threw away the bag containing the cocaine when Officer Jones was chasing him, the trial court was authorized to find that the cocaine was not seized as the result of a search but was instead abandoned before Sims submitted to the officer's request to stop.") (Punctuation omitted.)

*Hodari D.'s* holding that there must be submission to an officer's show of authority in order for there to be a seizure thereby has certainly been recognized in the appellate decisions of this State. See, e.g., *Gray v. State*, 254 Ga. App. 487, 488 (1) (562 SE2d 712) (2002) ("Although Gray's vehicle was signaled to stop in a police show of authority, Gray immediately fled the car[;

8

he] had not submitted to authority, nor was he in physical custody, when his car was stopped or when he discarded the paper bag containing the illegal drugs."); *Brown*, supra; *Walker v. State*, 228 Ga. App. 509, 510 (1) (493 SE2d 193) (1997) (Suspect "was not 'seized' when he first got back in the car at [the officer's] command. [Cit.] He was not 'seized' until he was finally [captured.]"); *Hunt v. State*, 205 Ga. App. 490 (423 SE2d 24) (1992) (Suspects attempted to drive away when officers activated blue lights, one throwing an object from the vehicle as they fled.)

Nonetheless, Walker notes several opinions of the appellate courts of this State that he contends demonstrate that a seizure occurs at the time of the officer's assertion of authority, *without* regard to any issue of the suspect's submission to that authority. However, his reliance on these opinions is misplaced. Although the Court of Appeals in *Hernandez-Espino v. State*, 324 Ga. App. 849, 850-852 (1) (752 SE2d 10) (2013), determined that a seizure occurred when the officer "told" the suspect to "just give me the drugs you just bought," it did so without any examination of the effect of the suspect's failure to comply with the direction, or the precedents of the United States Supreme

9

Court regarding the matter.[4]

> We have repeatedly cautioned that our decisions stand only for the points raised by the parties and decided by the court. See, e.g., *State v. Outen*, 289 Ga. 579 (714 SE2d 581) (2011); *Palmer v. State*, 282 Ga. 466, 651 S.E.2d 86 (2007). "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." Id. at 468, 651 S.E.2d 86 (citation and punctuation omitted).

*Holton v. Physician Oncology Services, LP*, 292 Ga, 864, 869-870 (2) (72 SE2d 702) (2013).

Further, examination of other opinions Walker cites for this proposition shows that he has a misunderstanding of the facts involved. For instance, in *State v. Banks*, 223 Ga. App. 838 (479 SE2d 168) (1996), although submission to the police officer's direction is not specifically mentioned in the recitation of the facts, from what is reported, it appears that the suspect complied with the direction that he "take his hand out of his pocket," id. at 839, and thus, the Court of Appeals correctly determined that a seizure had occurred at that point, even though the Court characterized the point of seizure as the officer's act of

---

[4] The opinion recites that the suspect "denied having any drugs. The officer then asked for consent to search, and [the suspect] agreed. The officer found crack cocaine in [the suspect's] pocket."

"demanding that he remove his hand from his pocket." Id. at 840. See also

*Durden v. State*, 320 Ga. App. 218, 220 (739 SE2d 676) (2013) (The suspect

removed his hands from his pockets when directed, and "even if the officer's

initial interaction with [the suspect] could be characterized as a first-tier

encounter, it escalated into a second-tier stop when the officer ordered Durden

to remove his hands from his pockets"); *Brown v. State*, 301 Ga. App. 82, 84

(686 SE2d 793) (2009) ("What began as a first-tier encounter escalated into a

second-tier stop when the officer told him to remove his hands from his

pockets," and the suspect removed one hand.); *Peters v. State*, 242 Ga. App.

816, 818 (531 SE2d 386) (2000) (The suspect "obeyed [the officers'] command"

to stop.) (Eldridge, J., concurring specially.)

Walker also contends that *Sams v. State*, 265 Ga. 534 (459 SE2d 551)

(1995), appears to be decided on the theory that a command from a law

enforcement officer with which a suspect does not comply, by itself, constitutes

a seizure under the Fourth Amendment.[5] The majority in *Sams* did not address

the holding in *Hodari D.*, supra, and certainly did not reach the conclusion

---

[5] Although the majority opinion in *Sams* does not mention any constitutional provision, its reliance on *Terry*, supra, reveals that it was decided under the Fourth Amendment.

Walker urges. See *Holton*, supra. Rather, the *Sams* opinion merely proceeds from the State's position "that the officer had sufficient grounds to detain Sams for questioning and to arrest Sams and that the search of Sams following the arrest gave probable cause to believe the truck contained drugs," *Sams*, supra at 535 (1), and rejects that contention, determining instead that "[t]he officer's decision to order Sams to stop was based only on Sams apparent race and the fact that Sams walked away upon seeing the officer." Id. at 535 (1,2). However, to the extent that *Sams,* or any other decision of the appellate Courts of this State, can be read as standing for the proposition that an officer's uncomplied-with command alone constitutes a seizure without regard to the holding of *Hodari D.*, those cases are hereby overruled.

Finally, Walker argues that, even if he did not comply with Officer Adriance's command to remove his hands from his pockets, he nonetheless stopped walking, a show of submission to the officer's authority.[6] But, it must be remembered, "there is no seizure without *actual* submission" to the show of authority, *Brendlin*, supra (emphasis supplied), and Walker certainly did not

[6] We note that the trial court's order did not find that Walker stopped in response to Officer Adriance's command to remove his hands from his pockets. See *Registe v. State*, supra.

12

submit to the actual direction. Even assuming that Walker stopped in response to Officer Adriance's command, "to comply with an order to stop—and thus to become seized—a suspect must do more than halt temporarily; he must submit to police authority . . . ." *United States v. Baldwin*, 496 F.3d 215, 218 (II) (2nd Cir., 2007). If Walker stopped in response to Officer Adriance's command, it was only a temporary halting, and not an actual submission to the asserted authority. See *United States v. Salazar*, 609 F.3d 1059, 1066 (II) (C) (10th Cir., 2010) ("Mr. Salazar did not submit to [the show of] authority until he complied with Trooper Berner's command to get out of the pickup.")[7] As Walker did not submit to Officer Adriance's show of authority before abandoning the items at issue, the Court of Appeals erred in reversing the trial court's denial of Walker's motion to suppress.

Judgment reversed. All the Justices concur, except Benham, J., who dissents.

---

[7] As we find that the Court of Appeals erred in determining that Walker had been seized when Officer Adriance commanded him to remove his hands from his pockets, we need not address its conclusion that Officer Adriance did not at that time have "an objective, articulable suspicion of criminal activity." *Walker*, 323 Ga. App. at 563 (1) (Punctuation omitted.)

S13G1793.  THE STATE v. WALKER.

BENHAM, Justice, dissenting.

I write because I respectfully dissent.  I believe the Court of Appeals's opinion was well-reasoned and reached the right result when it concluded that the trial court erred by failing to grant Walker's motion to suppress.  See Walker v. State, 323 Ga. App. 558 (747 SE2d 51) (2013).  Accordingly, I cannot join in this Court's majority opinion.