**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 18, 2020**

# In the Court of Appeals of Georgia

A20A0030. KALLON v. THE STATE.

MILLER, Presiding Judge.

After a bench trial in Gwinnett County, the trial court found Francis Gerard Kallon guilty of DUI less safe, DUI per se, and failure to maintain lane. Kallon argues that the trial court erred in admitting the results of the state-administered breath test because the "unconstitutional implied consent notice" that was read to him is inherently coercive when applied to a breath test and that he was unlawfully coerced into submitting to the test.[1] For the reasons that follow, we vacate the trial court's denial of Kallon's motion to suppress and motion in limine and remand the case for

---

[1] When this case was initially before this Court, Kallon's main argument was that, under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), *Miranda* warnings are necessary before a request for a state-administered breath test. The Supreme Court of Georgia rejected this argument in *State v. Turnquest*, 305 Ga. 758 (827 SE2d 865) (2019), and transferred Kallon's case back to this Court.

the trial court to consider his suppression argument in light of the Supreme Court of Georgia's decision in *Elliott v. State*, 305 Ga. 179 (824 SE2d 265) (2019).

"When the evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts in ruling on a motion to suppress or a motion in limine is subject to de novo appellate review." (Citation and punctuation omitted.) *Adcock v. State*, 299 Ga. App. 1 (681 SE2d 691) (2009).

In early 2017, Kallon struck a curb while driving and called a tow truck for assistance with changing his tire. Upon arriving at the scene, the tow truck driver found Kallon unresponsive and called the police. The responding officer knocked on Kallon's window, but Kallon had difficulty rolling it down. The officer smelled a strong odor of alcohol and noticed that Kallon's eyes were bloodshot and glazed. The officer conducted field sobriety evaluations, which yielded six out of six clues on the horizontal gaze nystagmus test, seven out of eight clues on the walk-and-turn, and three out of four clues on the one-leg stand. Immediately after arresting Kallon, the officer read the age-appropriate Georgia implied consent notice in accordance with OCGA § 40-5-67.1 (b) (2) (2012). The notice stated, in part: "Your refusal to submit to the required testing may be offered into evidence against you at trial." The officer

asked Kallon whether he would submit to the state-administered breath test, and Kallon responded, "yes, sir." There was no further discussion concerning the test. Kallon provided a breath sample, which showed a blood alcohol concentration of .115 grams.

The State filed an accusation against Kallon, charging him with DUI less safe (OCGA § 40-6-391 (a) (1)), DUI per se (OCGA § 40-6-391 (a) (5)), and failure to maintain lane (OCGA § 40-6-48 (1)). Kallon filed a motion to suppress the results of the breath test, which the trial court denied, and the trial court also denied an oral motion in limine to exclude the evidence from the test results. The trial court found Kallon guilty of all three counts and entered a 12-month sentence, consisting of 10 days in jail, suspended, and ordered Kallon to complete community service. This appeal followed.

1. First, Kallon argues that his convictions for DUI less safe and DUI per se should be reversed because the "unconstitutional implied consent notice" which the officer read to him is inherently coercive when applied to a request for a breath sample. In essence, he contends that because a suspect's refusal to consent to a breath test can no longer be admitted into evidence in criminal proceedings under *Elliott*, the former implied consent notice is inherently coercive because it provides that one's

3

refusal "may be" so admitted. Because we will not construe the Supreme Court's decision in *Elliott* as a determination that the former implied consent notice is unconstitutionally coercive, this enumeration of error fails.

Analyzing Kallon's argument requires us to assess the contours of two salient decisions of the Supreme Court of Georgia. First, in *Olevik v. State*, 302 Ga. 228, 247 (3) (a) (806 SE2d 505) (2017), the defendant "claim[ed] that the implied consent notice is so misleading and inaccurate that no person can validly consent to a state-administered test once the notice has been read." The Supreme Court, however, determined that former OCGA § 40-5-67.1[2] is not per se coercive and rejected the defendant's argument that the notice is unconstitutional on its face. Id. at 247-250 (3) (a). As part of its rationale, the Court explained that the defendant had "failed to demonstrate that the implied consent notice is unconstitutional in all of its applications." Id. at 248 (3) (a) (i).[3]

_____

[2] This statute directs the arresting officer regarding the selection of an appropriate implied consent notice and also contains the language of the various implied consent notices. OCGA § 40-5-67.1 (2012). The legislature has since amended the statute, effective January 1, 2019. OCGA § 40-5-67.1.

[3] We are fully aware that, in relying on the *Elliott* decision, Kallon is advancing a different argument in support of unconstitutionality than those addressed in *Olevik*, which pre-dates *Elliott*. As discussed further, however, the Supreme Court in *Elliott* made no determination that the implied consent notice is inherently coercive on its

4

In its subsequent *Elliott* decision, the Court addressed a separate issue, i.e., "the consequence of refusing" to submit to the state-administered breath test. *Elliott*, supra, 305 Ga. at 223 (IV) (E). To this end, the Court first held that, in a criminal prosecution, the Georgia Constitution "precludes admission of evidence that a suspect refused to consent to a breath test." Id. Relatedly, the Court held that OCGA §§ 40-5-67.1 (b) and 40-6-392 (d) were unconstitutional *to the extent that* they allowed a defendant's refusal to submit to a breath test to be admitted into evidence at a criminal trial. Id. The Court explained at length that its decision was not nullifying its numerous prior holdings — including *Olevik*'s holding — that the implied consent notice itself is not per se coercive. *Elliott*, supra, 305 Ga. at 222 (IV) (E). Regarding the implied consent notice, the Court merely noted, "[t]his decision may well have implications for the continuing validity of the implied consent notice as applied to breath tests." Id.

Clearly, the Supreme Court in *Elliott* never held that the former implied consent notice is unconstitutionally coercive. And if the Supreme Court in *Elliott* was careful to *deliberately* leave open the question of the impact of its decision on the validity of the implied consent notice, this Court will not take it upon itself to

face.

5

construe the Supreme Court's decision as a ruling that the notice is unconstitutionally coercive. Indeed, while "this [C]ourt may treat a statute as unconstitutional if it has already been held so by . . . the Supreme Court of this state," "this [C]ourt ha[s] no authority to declare an Act of the legislature unconstitutional." (Citation omitted.) *Pitts v. Gen. Motors Acceptance Corp.*, 130 Ga. App. 333, 335 (1) (203 SE2d 281) (1973). Kallon urges that the "ordinary and reasonable extension" of the Supreme Court's holding in *Elliott* is that the former implied consent notice has always been unconstitutional. But this argument directly undercuts our Supreme Court's repeated cautioning "that [its] decisions stand only for the points raised by the parties and *decided by the [C]ourt.*" (Emphasis supplied.) *State v. Walker*, 295 Ga. 888, 893 (764 SE2d 804) (2014). See also *Palmer v. State*, 282 Ga. 466, 468 (651 SE2d 86) (2007) (explaining that the Court of Appeals had "read too much into" two prior Supreme Court opinions where an issue was not raised in either of the two cases). Again, the Supreme Court in *Elliott* did not rule on the constitutionality of the former implied consent notice; the Court made explicitly clear that it was addressing "what consequences flow" from a defendant's assertion of the right to refuse to submit to a breath test. *Elliott*, supra, 305 Ga. at 223 (IV) (E). Therefore, we reject Kallon's

6

argument that the implied consent notice which was read to him is unconstitutionally coercive.

2. In a related clam of error, Kallon argues that the threat within the notice unlawfully coerced him into submitting to the State's breath test and that the State forced him to choose between waiving his Georgia constitutional right against self-incrimination and being incriminated by invoking it. Because this claim directly implicates the *Elliott* decision, we vacate the trial court's denial of Kallon's motion to suppress and motion in limine and remand for reconsideration of this suppression argument.

"[E]valuating whether self-incrimination was compelled depends on the totality of the circumstances. . . ." *Olevik*, supra, 302 Ga. at 248 (3) (a) (i). In the trial court, Kallon argued that he did not voluntarily submit to the breath test because he was misadvised of his rights when he was told that his exercise of his right against self-incrimination could be used against him at trial. Although the trial court determined that Kallon's consent was voluntary under the totality of the circumstances, the trial court could not consider the implication of the *Elliott* decision because *Elliott* had not been decided at the time of the motion hearing or Kallon's trial. See *Elliott*, supra, 305 Ga. at 223 (IV) (E) ("We recognize that our holding here may affect a

totality-of-the-circumstances inquiry into whether a defendant voluntarily submitted to a breath test where the State first threatened that, if she refused, that would be evidence against her at trial."). Therefore, we vacate the trial court's ruling on Kallon's motion to suppress and motion in limine and remand this case for the trial court to reconsider whether Kallon's consent was voluntary under the totality of the circumstances in light of *Elliott*. See *State v. Turnquest*, 305 Ga. 758, 775-776 (5) (827 SE2d 865) (2019) (vacating order on suppression motion and remanding for the trial court to consider, in light of *Elliott*, whether the implied consent notice that misleadingly suggested that the defendant's refusal to take the breath test could be used against him at trial rendered his consent to the breath test involuntary). We note that our opinion is not a determination that the trial court admitted the test results in error, and so we are not vacating Kallon's convictions or ordering that he be granted a new trial. The trial court, however, is free to order such relief upon remand if it determines that the breath test results should be suppressed. See *Livingston v. State*, 267 Ga. App. 875, 876 (2) (600 SE2d 817) (2004).

*Judgment vacated and case remanded. Mercier and Coomer, JJ., concur.*

8